John Ervin
3860 Elijah Ct Apt 1038
San Diego, California 92130
(408) 387-2935

Plaintiff, *in Pro Se*

FILED

14 MAY -6 PM 3:14

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY
BY

VIA FAX

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. ERVIN, an individual | ) Case No:  '14 CV 1142 WQH BGS |
| Plaintiff, | ) COMPLAINT FOR<br>) INJUNCTIVE RELIEF AND DAMAGES;<br>) DEMAND FOR JURY TRIAL |
| vs. | ) |
| COUNTY OF SAN DIEGO and<br>DOES 1–10 inclusive, | ) |
| Defendants. | ) |

Plaintiff, JOHN L. ERVIN, alleges as follows:

### JURISDICTION

1. This is a lawsuit for injunctive relief and money damages and is brought pursuant to 42 U.S.C. Section 1983, *et seq.*, and the Fifth and Fourteenth Amendments to the United States Constitution, for personal injuries and violation of constitutional rights by defendant County of San Diego and its Health and Human Services Agency, Child Welfare Services Division ("CWS"). Jurisdiction is founded on 28 U.S.C. Section 1331 and 1343 and the aforementioned statutory and Constitutional provisions. A state law claim requesting that the Court issue a writ of mandate and/or injunctive relief is alleged as well. Plaintiff invokes the Court's supplemental jurisdiction to consider the state law claim.

///
///
///

1                    Case No.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**GENERAL ALLEGATIONS**

2. Plaintiff is and was at all material times mentioned herein a resident of the County of San Diego, State of California.

3. At all times mentioned herein defendants DOES 1 through 10 were employees of defendant County of San Diego and in doing the acts hereinafter described acted within the course and scope of their employment. The acts of all defendants and each of them, were also done under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California. DOES 1 through 10 are sued individually and in their capacities as employees of the County of San Diego.

4. Defendant County of San Diego (the "County") is a public entity existing under the laws of the State of California and is the employer of the individual defendants named above.

5. The true names or capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 10 are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff will amend this complaint to show said defendants' true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES are in some manner responsible for the acts and injuries alleged herein.

6. Plaintiff is informed and believes and therefore alleges that at all times mentioned herein each of the defendants was the agent, servant and/or employee of each of the remaining defendants and were, in doing the acts herein alleged, acting within the course and scope of this agency and/or employment and with the permission, consent and authority of their co-defendants and each of them, and each is responsible in some manner for the occurrences hereinafter alleged; and that Plaintiff's injuries were proximately caused by the actions of each.

7. On October 27, 2013 Plaintiff filed a claim with the County of San Diego for the injuries alleged herein. About four weeks later the claim was denied.

///

///

///

## FACTUAL ALLEGATIONS

### The Underlying Dissolution

8. Ervin informed his then wife, Michal Ben-Nun we would be seeking divorce on August 28, 2011 after twelve years of marriage and three children in common. (San Diego Superior Court Case Number D531661)

9. Ben-Nun, since Ervin's decision has alleged criminal abuse against Ervin approximately eight times to the police directly or through proxy. After multiple investigations, no charges have ever been filed. She had never done so in 14 years of cohabitation.

10. As of this writing there have been approximately fifty hearings in family court. To summarize a number of these hearing: 1) There have been four denials of restraining order requests from Ben-Nun; 2) There have been five denials of Ben-Nun's requests that Ervin never have any unsupervised time with his children; 3) There have been three denials of Ben-Nun's requests that she agrees Ervin have unsupervised time with the children, but she have sole custody; 4) The Court forced Ben-Nun to return the funds from a joint account she had transferred into exclusively her name; 5) The Court forced Ben-Nun to provide Ervin with the children's passports for travel though she opposed doing so; 6) The Court forced Ben-Nun to provide Ervin with the tax information he needed to complete his income taxes though she opposed doing so; 7) The Court granted Ervin's request for a status only dissolution over Ben-Nun's opposition; and 8) The Court forced Ben-Nun to provide Ervin copies of the insurance cards for the children though she opposed doing so.

11. Ben-Nun applied for domestic violence restraining orders through the Family Court on August 29, 2011, September 19, 2011, October 6, 2011 and May 20, 2013. Each of the requests was denied.

12. The Court had minor's counsel represent the children from October 2011 until May 2013 and minor's counsel successfully advocated for joint custody for the father and that the mother attend therapy.

13. Through discovery it has been shown that Ben-Nun has accused Ervin of physical and emotional child abuse to over twenty-two mandated reporters of child abuse.[1]

14. Ben-Nun's custody position during the dissolution was that she should have exclusive custody whereby Ervin would never see his children under any circumstances.

15. In the context of the dissolution, Ben-Nun and Ervin were psychologically evaluated by Dr. David Green who in June 2012, concluded that Ervin had no violent tendencies at all, was highly competent and had an acute understanding of the social consequences of this action. While Ben-Nun was found to be a "creature of constant conflict ... prone to outbursts of anger ... with well below average understanding of the social consequences of her actions."

16. In a deposition on or about December 5, 2011, Ben-Nun admitted under penalty of perjury that **she had told the children that their father was planning on shooting them.**

### The Allegations of the Instant Action

17. The child A.E. had voiced suicidal ideation prior to May 15, 2013 at least five separate times to at least six different people, referencing the conflict inherent in his family life.

18. While the children were with the father on May 15, 2013, Ben-Nun, as is usual for her, texted the oldest child 85 different times trying to find out information about Ervin's parenting, including where the children were, whether Ervin bathed the children, and what time the middle child came back from playing.

19. At approximately 9:45 PM on May 15, 2013, Ben-Nun, after finding out that the middle child was fifteen minutes late, sent an email to Police Officer Jordan Wells alleging that Ervin was abusing and neglecting his children based on this information and the fact the youngest child had developed an ear infection.

20. Ervin, upon receiving this email, confiscated the cell phone of the oldest child T.E. and told her that her behavior spying for the mother was, "Killing us as a family."

---

[1] These are Brenda Daly, Tom Levenberg, Caroline Levenberg, Sherri Morrison, Brian Caroll, Eileen Delaney, Ashkan Roshanzaer, Jordan Wells, Cara Schukoske, Jennifer Shur, Teresa Comito, Aaron Meng, Juanita Aguayo, Tien Nguyen, Christopher Ritson, Dan Cano, William Benjamin, Emily McCutchan, Neil Ribner, David Green, Patricia Chavez-Fallon, Wilfred Li, Linda Litzau.

Case No.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

21. On May 17, 2013 Ben-Nun was to face a contempt hearing in Family Court for, *inter alia*, not making the children available for Ervin's custodial time around Christmas 2012, and for transferring community funds into a private account.

22. The morning of May 17, 2013, Ms. Ben-Nun, filed a criminal complaint about Ervin with Juvenile Services Officer Jordan Wells of the San Diego Police Department alleging that Ervin had threatened the children two days earlier at his residence, based on his telling T.E. that her behavior was, "Killing us as a family."

23. Ben-Nun had made at least four previous allegations of abuse against Ervin to Officer Wells, including making allegations through proxy by using her friends.

24. Officer Wells detained Ervin that day on suspicion of Criminal Threats (Pen. Code § 422) and the contempt hearing could not take place.

25. Officer Steve Dickenson investigated the matter for the Child Abuse Unit of the San Diego Police Department and found there had been no threat. No charges were ever filed nor were the criminal threat charges even forwarded to the City Attorney. Officer Dickenson told members of CWS that it was obvious to him that Ben-Nun was a woman misusing the child abuse reporting system to help her in Family Court. Officer Dickinson related to CWS a time in which Ben-Nun called the police telling them that Ervin was neglecting the child's medical needs while Ben-Nun was fully aware that Ervin had had an appointment scheduled.

26. On June 6, 2013, Family Law Judge Robert C. Longstreth of the San Diego Superior Court hear Ben-Nun's domestic violence restraining order request based on the May 15, 2013 allegation underlying the child abuse investigation. In a hearing on the merits, the allegation that Ervin threatened his children with violence was found factually false. He denied Ben-Nun's requests for a restraining order and her request for changes to the custody and visitation order. He called her an, "extreme," individual..

27. On that day, in a letter to Judge Longstreth, CWS stated that it had substantiated allegations that Ervin had emotionally abused his younger child A.E. while he was conversing with his daughter T.E. about here texting in another room while A.E. was half asleep. Judge Longstreth made his factual findings while knowing full well of CWS's position.

28. Ervin requested and received a grievance hearing on the substantiated finding which took place on September 4, 2013 before Elyce Hoehne as the hearing officer.

29. At the hearing, Ervin brought as witnesses his two oldest children, though the grievance facilitator refused to allow them to testify.

30. Ervin asserted that the factual finding of Judge Longstreth should collaterally estopp any factual assertions to the contrary to the grievance hearing. Ms. Hoehne did not allow this affirmative defense.

31. Protective services workers Christopher Ritson and Tien Nguyen testified for CWS and both indicated that though Ervin did not make a threat to his oldest daughter T.E. They none-the-less contended that A.E. allegedly overheard a threat while half asleep in another room and allegedly scratched himself because of it. They found this meant Ervin had perpetrated emotional child abuse.

32. At the grievance hearing Ervin pointed out that two pieces of evidence he had previously given to Nguyen were not made part of the record to her. This includes the email to the police of Ben-Nun, and the deposition testimony of Ben-Nun indicated she had been the one telling the children their father was going to shoot them.

33. At the grievance hearing Ervin objected to the testimony of the Ritson and Nguyen related to what the children said Ervin said as hearsay under Evidence Code section 1200. In spite of this, the hearing officer allowed the testimony.

34. At the grievance hearing Ervin testified that he had never threatened his children. He testified that on May 15, 2013 he said, "Killing us as a family," to only his daughter T.E. to describe what her spying was doing to them. He testified that he had not intended the phrase to cause emotional damage but merely meant it to convey to T.E. that her texts with her mother would be used by her mother in her ongoing attempts to permanently end the father-child relationships they enjoyed.

35. On September 8, 2013, Ervin requested the official transcript from the grievance hearing.

36. In a letter to Ervin dated October 8, but received by Ervin only about two weeks later, the County indicated it would uphold the substantiated finding and that their ruling was final.

37. The County took ten weeks to respond to Ervin's request for the transcript, requesting $600 from Ervin for its preparation in late November. Ervin paid that fee.

38. On January 17, 2014, grievance facilitator, Sofia Sanchez for the County informed Ervin that the County would not be providing the transcript of the proceedings to him, could not inform him when the transcript would be prepared, and only promised to tell him it was available ten days, after it was in fact available.

### San Diego County CWS has done this before

39. Plaintiff is informed and thereupon alleges that a nearly identical set of facts existed in a matter involving Raganath Saraswati heard in United States District Court – Southern District of California case number 07cv1415 WQH (POR), initial complaint filed August 3, 2007. In that case, as here, a mother about to face contempt charges in a contentious custody context alleged child abuse. Child Welfare Services then investigated found the matter inconclusive, and though there was ample evidence from the Family Court that the correct finding was unsubstantiated, none-the-less did not change the findings to unfounded until compelled by the appeals Court. *Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917.

### FIRST CAUSE OF ACTION
[42 U.S.C. § 1983 Constitutional Violations – Unlawful Policies, Customs and Habits]

40. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 39 above as though fully set forth herein.

41. As a result of the acts alleged above, particularly the County and its HHSA Division's failure to notify the Department of Justice that the original report of child abuse was subsequently proven to be unfounded, as well as the County/HHSA's woefully inadequate policies and procedures for review of allegations of child abuse, Plaintiff suffered a violation of his right not to be deprived of life, liberty or property without due process of law as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution. Further, Plaintiff suffered an unconstitutional violation of his right to privacy. Inclusion in the Child Abuse Central Index has

restricted Plaintiff's right and ability to fully pursue his profession and earn a living, further violating his right to due process rights. Inclusion has restricted his ability to adopt a child and has negatively impacted him in the custody litigation with his ex-wife regarding his three children. As a result, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, *et seq.*, in an amount to be proven at trial.

42. Defendant County, through its Health and Human Services Agency, Child Welfare Services, has unlawful policies, customs and habits of improper and inadequate investigation of child abuse allegations, and woefully inadequate review procedures of reports which subsequently are shown to be unfounded. Further, Defendant County has a policy, custom or habit of failing to notify the Department of Justice when a report of child abuse is subsequently proven to be unfounded, as required by California Penal Code section 11169(a). These unlawful customs, policies and habits proximately caused the injuries and constitutional violations described above. Accordingly, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, *et seq.*, in an amount to be proven at trial.

43. Defendant County, through its Health and Human Service Agency, Child Welfare Services, routinely allows children and small children, to "self-diagnose," emotional child abuse then prevents these children from being examined by the accused abuser during grievance hearings or any subsequent litigation. The County routinely allows the statements of children to enter into grievance proceedings on a hearsay basis in violation of California Evidence code and likewise routinely prevents the cross examination of these witnesses in violation of state law. (*Gonzalez v. Santa Clara County Department of Social Services* (2013) 220 Cal.App.4th 326) These unlawful customs, policies and habits proximately caused the injuries and constitutional violations described above. Accordingly, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, *et seq.*, in an amount to be proven at trial.

44. Defendant County, through its Health and Human Service Agency, Child Welfare Services, routinely issue "Safety Plans," meant to be used by parents to obtain temporary restraining orders in Family Court in which – almost always – the mother of the children is

seeking custody in divorce proceedings and is using the mere allegation of child abuse and inevitable investigation to affect mother advantaged custody. The County routinely issues these safety plans absent any evidence if the mother of the children voices fear for the children's safety whether such fear has any factual basis. These unlawful customs, policies and habits proximately caused the injuries and constitutional violations described above. The county operates under the assumption that in a contentious custody situation, the mother's allegations have factual veracity. Accordingly, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, *et seq.*, in an amount to be proven at trial.

45. Defendant County, through its Health and Human Service Agency, Child Welfare Services, targets speech in its investigation of child abuse which is protected by the first amendment. In the instant matter, as is typical for the County concluded that the Plaintiff's hyperbolic use of a phrase to one child somehow constituted child abuse to a half asleep child in another room on the basis of his emotional response, rather than what was said. These unlawful customs, policies and habits proximately caused the injuries and constitutional violations described above. Accordingly, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, *et seq.*, in an amount to be proven at trial.

46. As a proximate result of the acts alleged above, Plaintiff was injured in mind and body. Plaintiff has been restricted in his right and ability to adopt a child and has been restricted in his right to spend time with his own children. The inappropriately adverse findings of Child Welfare Services were used in Family Court to entirely remove Mr. Ervin from the children's lives until such time as Mr. Ervin was permitted a hearing in which case the allegations were found affirmatively false causing damage to Mr. Ervin and his children. Plaintiff has suffered a severe invasion of privacy and has suffered severe emotional distress. Plaintiff has also incurred significant expense, including attorney's fees. Plaintiff is therefore entitled to the injunctive relief requested herein and to general and compensatory damages in an amount to be proven at trial.

///

///

///

Case No.
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## REQUEST FOR INJUNCTIVE RELIEF

[42 U.S.C. § 1983, *et seq.* and California Law]

47. Pursuant to the provisions of the federal law and 42 U.S.C. section 1983 *et seq.*, as well as California law, and in light of the constitutional violations and customs, policies and practices of the County of San Diego as alleged above, Plaintiff respectfully requests that the Court issue a permanent injunction requiring the County of San Diego, through its Health and Human Services Division, to notify the Department of Justice that the report of child abuse against Plaintiff initially deemed to be substantiated has subsequently proven to be unfounded (thus requiring the DOJ to remove Plaintiff's name from the Child Abuse Central Index, as provided in California Penal Code section 11169(a)). Plaintiff seeks this or other equitable relief deemed appropriate by the Court according to proof made at the time of trial in this case.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as follows:

1. For a permanent injunction as described in paragraph 47 above and/or other equitable relief according to proof at trial;

2. For general and compensatory damages according to proof at trial;

3. For costs of the suit herein, including reasonable attorney's fees; and

4. For such other and further relief as the Court deems proper and just.

Date: May 6, 2014

_____
JOHN ERVIN, Plaintiff

Plaintiff hereby demands a jury trial in this action as to those claims for which a jury trial is appropriate.

Date: May 6, 2014

_____
JOHN ERVIN, Plaintiff