UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. ERVIN,<br><br>                                   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO and<br>DOES 1-10, inclusive,<br><br>                                   Defendants. | Case No.:  14cv1142-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's Fourth Amended Complaint (ECF No. 147) filed by Defendant County of San Diego.  (ECF No. 148).

## I.    BACKGROUND

On May 6, 2014, Plaintiff John L. Ervin, proceeding pro se, commenced this action by filing a Complaint against Defendant County of San Diego ("the County"), alleging that the County violated 42 U.S.C. § 1983 and seeking damages and injunctive relief arising from Plaintiff being listed on the Child Abuse Central Index ("CACI").  (ECF No. 1).

On July 21, 2014, the Court issued an Order staying the action "pending final resolution of the related action pending in San Diego Superior Court."  (ECF No. 9 at 2). On February 13, 2015, the Court issued an Order granting a Motion to Reopen the action. (ECF No. 30 at 3).

On April 1, 2015, Plaintiff filed the First Amended Complaint ("FAC"), alleging claims against the County, as well as newly-named Defendants Brenda Daly, Robert Lough, Debra Zanders-Willis, and the California Attorney General. (ECF No. 40). On September 24, 2015, the Court granted two Motions to Dismiss (ECF Nos. 43, 53) and dismissed the FAC without prejudice. (ECF No. 61).

On December 21, 2015, Ervin filed the Second Amended Complaint ("SAC"). (ECF No. 75). The SAC asserts claims against the County and Does 1 through 10 for violations of due process and equal protection of the law pursuant to 42 U.S.C. § 1983. The SAC asserts a claim against Defendant California Attorney General pursuant to 42 U.S.C. § 1983 alleging that California's procedure for listing individuals on the CACI violates Plaintiff's constitutional due process rights.

On January 25, 2016, Defendant California Attorney General filed a Motion to Dismiss (ECF No. 80) and the County filed a Motion to Dismiss (ECF No. 81). The Court granted the Motion to Dismiss filed by Defendant California Attorney General due to lack of standing and due to ongoing state judicial proceedings regarding Plaintiff's listing on CACI and whether he received a fair hearing, pursuant to the *Younger* abstention doctrine. (ECF No. 86 at 13–16). Pursuant to the *Younger* abstention doctrine, the Court denied the County's Motion to Dismiss without prejudice and stayed the case until further order of the Court. *Id.* at 18–19.

On November 18, 2016, the Court issued an order lifting the stay after the state court denied Plaintiff's petition for writ of mandate. (ECF No. 90 at 2).

On December 7, 2016, the County filed a Motion to Dismiss the SAC. (ECF No. 91). On July 14, 2017, the Court granted the Motion and dismissed all claims alleged against the County without prejudice. (ECF No. 94).

On April 13, 2018, Plaintiff appealed the state writ proceedings. (ECF No. 107 at 4).

On November 13, 2017, Ervin filed the Third Amended Complaint ("TAC"). (ECF No. 100). The TAC asserts claims against the County and Does 1 through 10 for violations

of due process and equal protection of the law pursuant to 42 U.S.C. § 1983 arising from Plaintiff's listing on the CACI.

On November 27, 2017, the County filed a Motion to Dismiss the TAC with prejudice or, in the alternative, a stay of this action on *Younger* abstention grounds until the underlying state court reaches a conclusion. (ECF No. 103). On March 22, 2018, pursuant to the *Younger* abstention doctrine, the Court denied the County's Motion to Dismiss without prejudice and stayed the case until further order of the Court. (ECF No. 106).

On March 8, 2019, the County filed a status report. (ECF No. 129). The status report filed by the County stated,

> The County is not currently aware of any reason why an order lifting the stay cannot be issued. . . . The underlying state court proceedings in *Ervin v. Cty. of San Diego*, Superior Court Case No. 37-2015-00034821-CU-WM-CTL, including post-judgment proceedings, are completely resolved as of March 6, 2019.

*Id.* at 1.

On March 14, 2019, the Court issued an order lifting the stay and stated, Defendant "shall file any motion to dismiss or other responsive pleading within twenty (20) days of the date of this Order." (ECF No. 130 at 4).

On May 9, 2019, the Court granted Plaintiff leave to file a Fourth Amended Complaint. (ECF No. 146).

On May 14, 2019, Plaintiff filed the Fourth Amended Complaint, the operative pleading in this action. (ECF No. 147). The Fourth Amended Complaint alleges claims against the County for violations of Fifth Amendment and Fourteenth Amendment due process and equal protection, and First Amendment free speech pursuant to 42 U.S.C. § 1983. The Fourth Amended Complaint alleges claims against the County for improper recording pursuant to 18 U.S.C. §§ 2511, 2520 and Cal. Penal Code §§ 632, 637.2 as well as stalking pursuant to Cal. Penal Code § 1708.7.

On May 28, 2019, the County filed a Motion to Dismiss. (ECF No. 148). On June 17, 2019, Plaintiff filed an Opposition to the Motion to Dismiss filed by the County. (ECF No. 150). On June 24, 2019, the County filed a Reply. (ECF No. 151).

## II.    ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT

On August 28, 2011, "Plaintiff informed his then wife, Michal Ben-Nun ("Ben-Nun") he would be seeking divorce . . . after twelve years of marriage and three children in common." (ECF No. 147 ¶ 4). Plaintiff was listed on the CACI following an incident on May 15, 2013, when "[Ben-Nun] accus[ed] him of criminal neglect because his son had been late for dinner that evening coming home at 5:30 instead of 5:00 and because his daughter, R.E., had a swollen ear lobe due to an earring Plaintiff gave her." *Id.* ¶ 27. "Plaintiff . . . discovered that . . . Ben-Nun became aware of his son's lateness because Ben-Nun had been using texts with the oldest daughter to spy on him. . . ." *Id.* ¶ 28. "The Plaintiff confiscated his daughter's phone and told her, her actions where [sic] 'Killing them as a family.'" *Id.* ¶ 29. At the time, approximately 9:30 p.m. on a school night, Plaintiff's 11-year-old son was in his room with the lights off and door closed. *Id.* Plaintiff thought he was asleep. *Id.*

"Officer Steve Dickenson investigated the matter for the Child Abuse Unit of the San Diego Police Department and found there had been no threat. No charges were ever filed nor were the criminal threat charges even forwarded to a prosecuting attorney." *Id.* ¶ 34. "Officer Dickenson told members of CWS[1] during their investigation that it was obvious to him that Ben-Nun was a woman misusing the child abuse reporting system to help her in Family Court." *Id.* ¶ 35.

"On June 6, 2013, Family Law Judge Robert C. Longstreth of the San Diego Superior Court heard Ben-Nun's domestic violence restraining order request based on the May 15, 2013 allegation… [and found] the allegation that Plaintiff threatened his children

---

[1] Child Welfare Services.

with violence . . . factually false." *Id.* ¶ 36. Judge Longstreth "denied Ben-Nun's requests for a restraining order and her request for changes to the custody and visitation order." *Id.*

"[I]n a letter to Judge Longstreth, CWS stated that it had substantiated allegations that Plaintiff had emotionally abused his younger child A.E. while speaking with his daughter T.E. about her texting in spite of A.E. being half asleep in another room with the door closed." *Id.* ¶ 37. On or about June 6, 2013, "Plaintiff was listed as an abuser of his own son on CACI and CWSCMS[2]." *Id.* ¶ 38.

"Plaintiff requested and received a grievance hearing which took place on September 4, 2013. . . ." *Id.* ¶ 39. "At the hearing, Plaintiff brought as witnesses his two older children, though the grievance facilitator refused to allow them to testify." *Id.* ¶ 40.

> "Plaintiff testified that he had never threatened his children. He testified that on May 15, 2013 he said, "Killing us as a family," to only his daughter T.E. to describe what her spying was doing to them. He testified that he had not intended the phrase to cause emotional damage but merely meant it to convey to T.E. that her texts with her mother would be used by her mother in her ongoing attempts to permanently end the father-child relationships they enjoyed."

*Id.* "Approximately 45 days after the hearing, Plaintiff received written notice that the hearing had upheld the substantiated finding." *Id.* ¶ 41.

On January 28, 2014, Plaintiff filed for a writ of mandate to challenge the grievance hearing decision (*Ervin v. San Diego Cty.*, San Diego Superior Court Case Number 2014-00000207-CU-WM-CTL). *Id.* ¶ 42.

> "On September 12, 2014, Plaintiff prevailed on the petition. . . ."The Court found that . . . there was no evidence to conclude there was abuse as understood by statute. . . . The Court ordered Plaintiff removed from CACI forthwith and gave the County the option of closing the referral as inconclusive or holding a new hearing in light of its findings."

*Id.* ¶ 46. On October 2, 2014 the Court executed the peremptory writ of administrative

---

[2] Child Welfare Services Case Management System.

Mandate. . . ." *Id.* ¶ 47.

"The County chose to hold a second administrative hearing on October 23, 2014 before [Robert] Lough." *Id.* ¶ 50.

> "At the October 23 hearing Mr. Lough told the Plaintiff that the hearing could not legally take place without his consent to be recorded, though Plaintiff had brought a court reporter and did not wish to be recorded given the previous issues he had with obtaining accurate transcripts. On that basis, Lough ended the second administrative hearing and released all parties."

*Id.* ¶ 51.

> "The County on or about November 5, 2014 appeared in Superior Court on an *ex parte* application seeking judicial permission to relist Plaintiff on CACI based on the second administrative hearing or to receive permission to hold another hearing and to tax Plaintiff's memorandum of costs. The Court denied any relief."

*Id.* ¶ 54.

"The County then . . . scheduled a third administrative hearing for Dec. 19, 2014." *Id.* ¶ 55. "This third hearing was held before Mr. Lough, without Plaintiff's presence or consideration of his written objections, and without consideration of his oldest child's written declaration." *Id.* ¶ 56.

> "On January 19, 2015 the administrative decision authored by Mr. Lough was signed. It states that the County substantiated emotional abuse and would relist Plaintiff on CACI. It further states that Defendant County did not offer any new or rebuttal evidence that had not been previously considered by the Superior Court."

*Id.* ¶ 58. "Plaintiff was relisted on CACI in February 2015." *Id.* ¶ 59.

"Plaintiff filed for a second writ of mandate on October 15, 2015 asking to reverse his inappropriate listings on CACI and CWSCMS, (*Ervin v. San Diego Cty.*, San Diego Superior Court Case Number 2015-00034821-CU-WM-CTL)." *Id.* ¶ 64. "The State Court ruled against Plaintiff on October 14, 2016, finding that Plaintiff had not exhausted his administrative remedies." *Id.* ¶ 67. "Plaintiff filed a timely appeal in the State of California Fourth District Court of Appeals on April 3, 2017." *Id.* ¶ 69. "Plaintiff prevailed on his

appeal (*Ervin v. Cty. of San Diego* (4/13/18 (D072057) 2018 WL 1771193)) and the matter was remanded to the State Superior Court with instructions." *Id.* ¶ 71.

"The State Superior Court heard the matter on remand on September 21, 2018 and issued its ruling on October 17, 2018, writing,

> 'The court finds, after an independent review, the grievance hearing officer's finding upholding the substantiated finding of child abuse in a January 2015 Department of Justice Grievance Decision was not supported by the weight of the evidence… The court orders the Defendants/respondents County of San Diego to direct its Health and Human Resources to reverse its finding of substantiated to unfounded for A.E. The County shall prepare necessary documentation to remove Plaintiff's name from the Department of Justice Child Abuse Central Index ("CACI") forthwith.'"

*Id.* ¶ 73.

"Brenda Daly was at all material times mentioned herein a deputy district attorney for San Diego County and known to Plaintiff and Ben-Nun peripherally, as she was a neighbor living about twelve houses away from them in 2011." *Id.* ¶ 91.

> "Ben-Nun recruited Ms. Daly to advise her on how to achieve the best custody position, and Ms. Daly advised Ben-Nun to call the police and ask for an Emergency Protective Order which would remove Plaintiff from the house and prevent him from seeing the children … and to lie about being afraid if she had to."

> "Ben-Nun … call[ed] the police and alleged Plaintiff had threatened her days earlier. The responding officer … advised Ben-Nun that her allegations were not credible and that there was nothing he could do. Ben-Nun then called Ms. Daly and put her on the phone with the officer. Ms. Daly then represented to the officer that she was a deputy district attorney and she knew that Plaintiff was mentally ill and dangerous, and advised the officer of his ability to request an emergency protection order. The officer then did precisely as Ms. Daly said."

*Id.* ¶¶ 92-93.

"Ms. Daly become aware in 2013 that Plaintiff had placed complaints about her actions to the district attorney's office and to his representative on the board of county

supervisors. . . . [T]hese complaints led to investigations about Ms. Daly's wrongdoing, which angered Ms. Daly who then attempted revenge." *Id*. ¶ 95.

> "Ms. Daly, who knew the leaders at Plaintiff's children's school and the local police officers in the neighborhood, then sought revenge against Plaintiff by having him found an abuser, using the perceived authority which came with being a deputy district attorney to gain credibility with her plan.
>
> In January 2013 Ms. Daly produced three letters she said were handed to her by Plaintiff's (then) ten-year-old son A.E. that evidenced abuse from him. She handed these letters to the teacher of Plaintiff's son . . . . [The teacher] alerted the principal of the school of this in an email of January 27, 2013 in which he states that the handwriting and writing style did not match that of Plaintiff's son.
>
> Ms. Daly in fact knew that the letters were not from Plaintiff's son, but were from the files of a previous child abuse case at the district attorney's office where she worked.
>
> In March of 2013, Ms. Daly arranged for an interview with Eileen Delaney, the principal of the school for both her and Plaintiff's children. In this meeting Ms. Daly told Ms. Delaney that she believed Plaintiff was going to file suit against her. Within one hour from this meeting Ms. Delaney sent emails to San Diego Police Officer Jordan Wells alleging Plaintiff was terrorizing parents at the school and requesting police involvement.
>
> Shortly thereafter, a close politically-allied friend of Ms. Delaney, Cara Schukoske who had the role of director of pupil services for the school district, applied for a restraining order in civil court against Plaintiff . . . . The Civil Court dismissed the petition for restraining order out of hand but set a hearing though the school never bothered to serve the meritless petition on Plaintiff and the case was dismissed.

*Id*. ¶ 96-100.

Plaintiff alleges that "the County has, as a policy, adopted the strategy of creating unnecessary litigation barriers against its complaining citizens." *Id*. ¶ 115.

> "Plaintiff is informed and thereupon alleges that CWS may legally interview, investigate, remove or otherwise interact with children under only three circumstances: with parental consent, pursuant to a Court order or because of exigent circumstances. . . . Plaintiff is informed and thereupon alleges that

> CWS previously had as a policy to remove children without grounds for intervention, while pretending that Court Orders did exist, which in fact did not exist . . . Plaintiff is informed and thereupon alleges that CWS has a policy of performing entirely investigative (as opposed to medically necessary) medical examinations on the genitals and anuses of children – often very small children – without grounds for intervention and without the presence or permission of parents . . ."

*Id.* ¶ 118-120.

Plaintiff alleges that "California Rules of Court, Rule 5.552 provide that a father of a child may receive AND copy the records from the CWS regarding their children." *Id.* ¶ 128. "Plaintiff has been informed, and thereupon believes that the County, generally does not allow parents to receive such records without litigation." *Id.* ¶ 129.

Plaintiff alleges that "[t]he County, consistent with their policy in other cases, has acted to drag out this litigation as long as possible, by, for instance, claiming there was no State Appeal planned when there was, unsuccessfully opposing good faith amendments, acting in State Court with frivolous litigation around costs to extend the stay in this matter, and unsuccessfully opposing lifting the stay in this matter." *Id.* ¶ 130.

Plaintiff alleges that "[u]sing the CPRA, [he] has gathered information from Counties throughout California regarding CACI grievance hearings." *Id.* ¶ 144. Plaintiff alleges that

> "The responding counties held 1,444 CACI hearings of which 617 led to upholding the initial substantiation. In 1,444 hearings, only the Plaintiff was known to the County administering the hearing to NOT being on the CACI at the time of the hearing."

*Id.* ¶ 146–147.

Plaintiff alleges that he "has filed requisite government tort claim letters pursuant to California Government Code sections 810–996.6 to the County regarding the allegations and claims contained herein in a timely manner . . ." *Id.* ¶ 148.

Plaintiff alleges that he has suffered emotional damage and loss of future earnings. *Id.* ¶¶ 187, 190–191.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation omitted).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## IV.   JUDICIAL NOTICE

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).  However, there are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id*.

First, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotations omitted).

Second, under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (internal quotation marks omitted). The "incorporation by reference" doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The County requests that the Court take judicial notice of the Notice of Ruling Denying Writ of Administrative Mandamus & Proposed Judgment issued by the Superior Court of the State of California for the County of San Diego in *Ervin v. Cty. of San Diego*, San Diego Superior Court Case No. 37-2015-00034821 on October 14, 2016. (ECF No. 148-1 at 3 n.1). Plaintiff requests that the Court take judicial notice of the unpublished opinion issued by the Fourth Appellate District, Division One, of the State of California for the County of San Diego in *Ervin v. Cty. of San Diego*, San Diego Superior Court Case No. 37-2015-00034821 (ECF No. 150-1 Ex. 1) and the Minute Order denying Defendant's

motion to tax costs from Plaintiff's Second Writ of Mandate in *Ervin v. Cty. of San Diego*, San Diego Superior Court Case No. 37-2015-00034821. (ECF No. 150-1 Ex. 2). Neither the Plaintiff nor the County oppose the requests for judicial notice. The Court takes judicial notice of the Notice of Ruling Denying Writ of Administrative Mandamus & Proposed Judgment, the unpublished opinion and the Minute Order because this proceeding in state court has a direct relation to the matters at issue in this case. *See Borneo, Inc.*, 971 F.2d at 248.

The County requests that the Court take judicial notice of Plaintiff's correspondence with County Counsel Claims and Investigation Division (ECF No. 148-2, Ex. A), Notice of Insufficient Claim (ECF No. 148-2, Ex. B), and two Notices of Rejection of Claim (ECF No. 148-2, Ex. B-C). Plaintiff does not oppose the request for judicial notice. The Court takes judicial notice of the records relating to Plaintiff's claim (ECF No. 148-2, Exs. 1-4) because Plaintiff's claims depend on the contents of the documents (ECF No. 147 ¶ 148), the county attached the documents to its Motion to Dismiss, and neither party disputes the authenticity of the documents. *See ESPN*, 393 F.3d at 1076.

## V. DISCUSSION

### A. Procedural Due Process Violation

The County contends that Plaintiff's first claim should be dismissed because the Fourth Amended Complaint does not state facts to support a procedural due process claim. (ECF No. 148-1 at 13). The County asserts that "Plaintiff alleges that he was notified of his listing on the CACI list and received a grievance hearing." *Id*. at 14. Thus, the requirements of due process were satisfied. *Id*. Plaintiff contends that due process requires "more than merely notice and hearings." (ECF No. 150 at 13). Plaintiff contends that the hearings themselves must conform to due process requirements and that his administrative hearings were not impartial. *Id*. at 14.

"A § 1983 action may be brought for a violation of procedural due process . . . [and] [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is

unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon*, 494 U.S. at 126.

The Ninth Circuit Court of Appeals "evaluate[d] the process that California provides persons listed on the CACI under the three part test set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." *Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1193 (9th Cir. 2009), *as amended* (Jan. 30, 2009), *rev'd and remanded sub nom*. *L.A. Cty., Cal. v. Humphries*, 562 U.S. 29 (2010). "*Mathews* instructs us to balance (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the governmental interest, including the fiscal and administrative burdens of additional procedures." *Id*. "The procedural due process inquiry is made 'case-by-case based on the total circumstances.'" *Id*. (quoting *Cal. ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir.2003)).

In *Humphries*, the Court found that "there is a substantial risk that individuals will be erroneously listed on the CACI, and that California offers insufficient means for correcting those errors." *Id*. at 1200. The Court stated that:

> Beyond declaring that California's procedural protections are constitutionally inadequate, we do not propose to spell out here precisely what kind of procedure California must create. The state has a great deal of flexibility in fashioning its procedures, and it should have the full range of options open to it. We do not hold that California must necessarily create some hearing prior to listing individuals on CACI. At the very least, however, California must

promptly notify a suspected child abuser that his name is on the CACI and provide 'some kind of hearing' by which he can challenge his inclusion.

*Humphries*, 554 F.3d at 1201. After *Humphries* was decided, California implemented procedural mechanisms. Pursuant to California Penal Code §11169(c), an "agency shall ... notify in writing the known or suspected child abuser that he or she has been reported to the Child Abuse Central Index (CACI)." Cal. Pen. Code § 11169(c). Pursuant to California Penal Code §11169(d), "any person who is listed on the CACI has the right to a hearing before the agency that requested his or her inclusion in the CACI to challenge his or her listing on the CACI." Cal. Pen. Code § 11169(d).

In Plaintiff's first cause of action against the County and DOES 1-10 for deprivation of procedural due process, Plaintiff alleges that the County "deprived Plaintiff of procedural due process as afforded him by the Fifth and Fourteenth amendments of the US Constitution, leading to his improper listings on CACI and CWSCMS as a substantiated, emotional abuser of his own son." (ECF No. 147 at 33-34). Specifically, Plaintiff alleges that

a. The weight of the evidence never supported that he perpetrated abuse;
b. Three administrative hearings to challenge the listing all improperly considered hearsay;
c. The listings persisted in spite of judicial officers from superior tribunals telling the County there was not sufficient evidence of abuse and that the referral should have been closed;
d. The first administrative hearing improperly excluded the testimony of Plaintiff's children;
e. The second administrative hearing was held in contravention to state law;
f. The third administrative hearing was held in contravention to both state law and court order;
g. The third administrative hearing was a "kangaroo court," overturned on writ petition even though Plaintiff was not present at the hearing;[15]
h. The County sought out Riverside County employee Robert Lough to administer the hearing because it knew he never reversed a substantiation of abuse;
i. County social workers and hearing officials, pursuant to County policy, interpret the phrase "emotional abuse" colloquially rather than legally; and
j. The County had decided, as a policy, to designate Plaintiff as an abuser in

14

retaliation for this lawsuit, regardless of there being insufficient evidence to do so.

*Id*. at 34-35.

The Court finds that California has procedural mechanisms in place to provide for notice to the suspected child abuser prior to listing, and to provide an opportunity to challenge listing on CACI. The Fourth Amended Complaint fails to allege facts that show a substantial risk that individuals will be erroneously placed on the CACI list, and that California has insufficient means for correcting any errors.

Plaintiff alleges that he was notified of his listing on the CACI and received three administrative hearings to challenge the listing. Plaintiff alleges that the decision to list him on CACI and CSWCMS as an emotional abuser was overturned by State Court on three separate occasions. Plaintiff alleges that, after oral argument before the State of California Fourth District Court of Appeals, he prevailed on appeal. On remand in State Superior Court, Plaintiff alleges that the County was ordered to prepare necessary documentation to remove Plaintiff's name from CACI. Plaintiff alleges that he was removed from CACI on or about October 25, 2018. The factual allegations in the Fourth Amended Complaint are not sufficient to support a claim that Defendant County has deprived Plaintiff of procedural due process rights under the Fifth and Fourteenth Amendments. Plaintiff's first claim against the County of San Diego is dismissed.

**B. Substantive Due Process Violation**

The County contends that Plaintiff's second claim should be dismissed because "the liberty interest in familial relations is limited by the compelling government interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." (ECF No. 151 at 4). The County contends that Plaintiff correctly points out, "[T]he right to familial relations 'does not include a constitutional right to be free from child abuse investigations.'" *Id*. Plaintiff contends that he has a "substantive due process right to an unencumbered parent-child relationship and a substantive due process right to privacy." (ECF No. 150 at 16). Plaintiff

contends that "the County and its employees conducted over seven investigations as to whether the Plaintiff was abusing his own children without any probable cause, exigency, court order or parental permission." *Id.* at 17. Plaintiff asserts that the County has been "intentionally acting as the mother's private investigator, lawyer and extrajudicial advocate in custody litigation" in order to "transfer custody and control of the children to mother." *Id.* at 17–18.

The Ninth Circuit has stated that "parents have a 'constitutionally protected right to the care and custody of [their] children' and cannot be 'summarily deprived of that custody without notice and a hearing,' except where 'the children [are] in imminent danger.'" *Mueller v. Auker*, 700 F.3d 1180, 1187 (9th Cir. 2012) (citing *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir.1997). Plaintiff's "[constitutional] rights are not absolute . . . [u]nder certain circumstances, these rights must bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae* . . . ." *Id.* at 1186. "Failure to investigate or intervene when child abuse is suspected can subject a state and its employees to liability." *Woodrum v. Woodward Cty.* 866 F.2d 1121, 1125 (9th Cir. 1989).

In Plaintiff's second cause of action against the County and DOES 1-10 for deprivation of substantive due process, Plaintiff alleges "the County, acting under color of state law, deprived Plaintiff of substantive due process as afforded him by the Fifth and Fourteenth amendments of the US Constitution, by burdening Plaintiff's rights, to be informed of, and make decisions about the care, custody, and control of his children." (ECF No. 147 ¶ 201). Plaintiff alleges that the County infringed his "substantive due process right to privacy as afforded by the First, Fourth, Fifth and Fourteenth Amendments of the Constitution (*Griswold v. Connecticut* 381 U.S. 479 (1965)) and by the California State Constitution." *Id.* ¶ 202. Plaintiff alleges that he "a right to a life with his children and new wife not subject to persistent dissection, through his children and acquittances, interviewed for abuse and neglect, including sexual abuse." *Id.*

The Court finds that the factual allegations in the Fourth Amended Complaint are not sufficient to support a claim that Defendant County has deprived Plaintiff of substantive due process. In this case, Plaintiff alleges that he received notice of his listing on the CACI, received three administrative hearings to challenge the listing, was heard in State Court on three separate occasions, and prevailed on appeal before the State of California Fourth District Court of Appeals. Plaintiff's second claim against the County of San Diego is dismissed.

### C. Retaliation for Exercise of Free Speech

The County contends that Plaintiff's second claim should be dismissed because Plaintiff alleges that the County's defense of the instant case equates to retaliation. (ECF No. 151 at 5). The County asserts "it was Plaintiff who filed the (a) instant lawsuit and (b) who continues to prosecute this case. . . ." *Id*. The County also contends that Plaintiff makes conclusory allegations regarding Brenda Daly and "fails to show that his injury was a result of this alleged wrongful conduct." (ECF No. 148-1 at 23). Plaintiff contends that Brenda Daly "pressured local police and school to detain and launch litigation against Plaintiff because he complained about her at the County . . . ." (ECF No. 150 at 20). Plaintiff contends that these actions "would chill the free expression of individuals." *Id*. at 21.

The Ninth Circuit has held that "[t]here are three elements to a First Amendment retaliation claim": "[A] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing *Mendocino Envt'l Cntr. v. Mendocino Cty.,* 192 F.3d 1283, 1300 (9th Cir.1999)).

In Plaintiff's third cause of action against the County and DOES 1-10 for retaliation for exercise of free speech, Plaintiff alleges "the County, acting under color of state law, deprived Plaintiff of his First amendment right to petition and speak freely without fear of

retaliation, by listing him on CACI and CWSCMS as a substantiated emotional abuser of his son, absent sufficient evidence for doing so, in retaliation for his bringing this Federal Lawsuit in May 2014." (ECF No. 147 ¶ 212). Plaintiff alleges that "Brenda Daly, by arranging the unjust detention of Plaintiff, by planting fabricated evidence of abuse at the elementary school of his son and by coercing the school, three times to launch frivolous litigation against him; was acting under color of state law to deprive Plaintiff of his First amendment right to petition and speak freely, as her unconstitutional acts were in retaliation for the complaints he had made about her prior 2011 acts to her supervisors at the County." *Id*. ¶ 213.

The factual allegations in the Fourth Amended Complaint are not sufficient to support a reasonable inference that Plaintiff's right to petition and speak freely "was a substantial or motivating factor in the defendant's [the County's] conduct" to list him on CACI and CWSCMS. *Id*. The County proceeded pursuant to state law. Plaintiff fails to allege sufficient facts to support a reasonable inference that Brenda Daly acted pursuant to any policy to arrange his unjust detention, plant fabricated evidence of abuse, or coerce Plaintiff's son's elementary school to launch frivolous litigation against Plaintiff. (ECF No. 147 ¶ 213). Plaintiff's third claim against the County of San Diego is dismissed.

### D. Equal Protection Violation

The County contends that Plaintiff's fourth claim should be dismissed because Plaintiff's arguments are overly vague and fail identify facts to show that he is part of a protected or suspect class that the County intentionally discriminated against. (ECF No. 148-1 at 17). In addition, the County contends that Plaintiff "was removed from CACI pursuant a Superior Court order and that the second and third hearings were held pursuant to court order. (Peremptory Writ of Administrative Mandate filed on January 28, 2014 in case number 37-2015-00034821-CU-WM-CTL.)" (ECF No. 151 at 6). Plaintiff contends that "he, out of greater than 1,444 statewide CACI grievants [sic], was the only one not listed on CACI during the hearing." (ECF No. 150 at 22). Plaintiff contends that the court order granting the County the option to hold a second administrative hearing on October

23, 2014 was not legal. *Id*. at 23. Plaintiff contends that his third administrative hearing on November 5, 2014, was improper. *Id*.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In Plaintiff's fourth cause of action against the County and DOES 1-10 for deprivation of equal protection, Plaintiff alleges "the County and its employees, acting under color of state law, deprived Plaintiff of equal protection of the law as afforded him by the Fourteenth amendment of the US Constitution, leading to his listings on CACI and CWSCMS, mental illness in his son, estrangement from his son and older daughter and the other damages enumerated above, by treating him as a 'class of one.' (*Vill. of Willowbrook v. Olech* 528 U.S. 562 (2000))." (ECF No.147 at 39-40). More specifically, Plaintiff alleges "Over 1,000 documented CACI grievance hearings took place in San Diego, Los Angeles, Orange, Riverside, San Bernardino or Imperial Counties between the years 2013–2018, yet only Plaintiff was knowingly NOT listed on CACI at the time of his hearing in late 2014 . . . and this hearing led to Plaintiff's CACI listing in early 2015." *Id*. at 40.

Plaintiff fails to allege facts sufficient to establish that he has been intentionally treated differently from others similarly situated. *See Vill. of Willowbrook*, 528 U.S. at 564. In this case, Plaintiff alleges that he was listed on CACI after notice and a hearing, that he challenged the listing in state court, and that the state court ordered Plaintiff

removed from CACI.  Taking Plaintiff's allegations as true, Plaintiff fails to allege sufficient facts to support a reasonable inference that the County "acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano*, 345 F.3d at 1082.  Further, Plaintiff fails to allege an equal protection class-of-one claim because Plaintiff fails to allege facts sufficient to establish that he has been treated differently from others similarly situated.  *See Vill. of Willowbrook*, 528 U.S. at 564.  Plaintiff's fourth claim against the County of San Diego is dismissed.

### E. *Monell* Related Claims

A municipality or governmental entity cannot be found liable under § 1983 on "for an injury inflicted solely by its employees or agents."  *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978).  Liability can be imposed on local governing bodies only for injuries inflicted pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690-91.  "[I]n addition to an official policy, a municipality may be sued for 'constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the governmental body's official decisionmaking channels.'"  *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) (quoting *Monell*, 436 U.S. at 690-91), *as amended on denial of reh'g* (Jan. 12, 1996).  To establish municipal liability, Plaintiff must show: (1) he was deprived of a constitutional right; (2) the County had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the "moving force behind the constitutional violation."  *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).

The Court has dismissed Plaintiff's 42 U.S.C. § 1983 claims with respect to Defendant County, therefore, Plaintiff cannot show that he was deprived of a constitutional right.  Because the Court concludes that Plaintiff was not deprived of a constitutional right, Plaintiff cannot establish municipal liability and the Court need not reach the issue of whether the alleged constitutional violation was caused by a custom or policy of the County.  *See id.* at 835.

## F. Federal Claim of Improper Recording

The County contends that Plaintiff's sixth claim should be dismissed because "there are no factual allegations of the County illegally wiretapping and/or intercepting Plaintiff's telephone calls." (ECF No. 148-1 at 19). The County "concedes it recorded the grievance hearings, which it was permitted to do because the County was a party to said hearings." *Id*. at 24. Plaintiff contends that he did not consent to the recordings. (ECF No. 150 at 29). Plaintiff contends that "the County did not consent to the recording until the had gathered the Plaintiff's permission. *Id*.

18 U.S.C § 2511(2)(c) states "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C § 2511(2)(c).

In Plaintiff's sixth cause of action against the County and DOES 1-10 for improper recording, Plaintiff alleges that the County violated 18 U.S.C § 2511 by engaging in illegal wiretapping and, thus, the recovery of civil damages is authorized pursuant to 18 U.S.C § 2520. (ECF No. 147 at 44). Plaintiff alleges "Defendants and all of them jointly and severely made audio recordings of phone calls and other conversations between Plaintiff and Robert Lough regarding confidential CWS matters and without his permission and with full knowledge that Plaintiff did not wish to be recorded on or about October 23, 2014 and December 19, 2014."

Plaintiff alleges that the recording on October 23, 2014 occurred during "a second administrative hearing . . . before Mr. Lough . . . ." (ECF No. 147 ¶ 50). Plaintiff's sole reference to December 2014 in his Fourth Amended Complaint describes a Family Court hearing. Id. ¶ 181. In both instances, the County was a party to the communication and, thus, was authorized pursuant to 18 U.S.C § 2511(2)(c) to intercept "wire, oral, or electronic communication" with Plaintiff. The Court finds that the factual allegations in the Fourth Amended Complaint are not sufficient to support a claim that Defendant County

engaged in illegal wiretapping. Plaintiff's sixth cause of action against the County of San Diego is dismissed.

### G. State Claims of Improper Recording and Stalking

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims . . . ." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c); *see also Cross v. Pac. Coast Plaza Inv., L.P.*, No. 06 CV 2543 JM (RBB), 2007 WL 951772, *3 (S.D. Cal. Mar. 6, 2007).

Here, the Court has dismissed all claims over which it has original jurisdiction. Thus, the Court declines to exercise jurisdiction over the state law claims. Plaintiff's seventh and eighth claim against the County of San Diego are dismissed.

### H. Injunctive Relief

The County contends that Plaintiff's ninth claim should be dismissed because injunctive relief is not a cause of action and Plaintiff has failed to meet the heightened burden of pleading entitlement to a permanent injunction. (ECF No.148-1 at 22). The County contends that "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Thompson v.*

*JPMorgan Chase Bank, N.A.*, 2017 WL 897440, at *12 (N.D. Cal. Mar. 7, 2017) (citing *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1167 (N.D. Cal. 2013)). In addition, according to the County, "[a] plaintiff seeking a permanent injunction must demonstrate that he has suffered an irreparable injury and that other remedies at law are inadequate to compensate for that injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff contends that "[t]he Court need simply incorporate what the Plaintiff calls a cause of action for an injunction into the prayer for relief." (ECF No. 150 at 31). Plaintiff contends that "he has suffered irreparable damage." *Id.* Plaintiff contends that "the County will not simply change it constitutional policies after a money judgment." *Id.*

"Injunctive relief is appropriate in cases involving challenges to government policies that result in a pattern of constitutional violations." *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998). "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Permanent injunctive relief is warranted where . . . defendant's past and present misconduct indicates a strong likelihood of future violations." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc.*, 547 U.S. at 391.

In Plaintiff's ninth cause of action against the County and DOES 1-10 for injunctive relief, Plaintiff seeks an order enjoining and prohibiting Defendants:

a. From failing to establish, implement, and follow policies, procedures, customs and practices mandated by the U.S. Constitution and California Constitution, and laws, as to the questioning, detention, continued detention and examination, of minor children in alleged child abuse or neglect matters;

b. From failing to properly supervise, manage, control, and direct the activities of its officers, agents and employees as to their compliance with those principals mandated by the First, Fourth and Fourteenth Amendments to the United States Constitution and laws, and under the California Constitution and laws, including those as to the right of privacy, and as to child abuse and neglect proceedings;

23

c. From failing to implement and establish a policy of truthful, unbiased and full and complete reporting, including evidence and testimony both positive and negative (exculpatory), in the investigation or proceedings of matters pursuant to Chapter 2 (commencing with section 200) of Part 1 of Division 2 of the California Welfare and Institutions Code;

d. From failing to implement grievance hearing proceedings which are not based exclusively on hearsay, which do not as a matter of course exclude exculpatory witnesses and testimony, which do not as a matter of course find against self-represented litigants, and which require findings of child abuse based on legally cognizable terms rather; and

e. From conducting interviews during child abuse referrals absent one or more of: parental consent, exigent circumstances or court order.

(ECF No.147 at 49-50).

The Court has dismissed Plaintiff's 42 U.S.C. § 1983 claims with respect to Defendant County, therefore, Plaintiff cannot show that he is entitled to injunctive relief pursuant to 42 U.S.C. §1983. Plaintiff's ninth claim against the County of San Diego is dismissed.

**CONCLUSION**

The Motion to Dismiss the Fourth Amended Complaint filed by Defendant County of San Diego is GRANTED. (ECF No. 148).

The County contends that Plaintiff should not be allowed leave to amend because he has had numerous opportunities to state his claim against the County, has continued to fail to correct the defects in his complaint, and has demonstrated an inability to allege facts to support his claims. (ECF No. 148-1 at 27). Plaintiff requests leave to amend should any part of the Motion to Dismiss be granted. (ECF No. 150 at 32).

Federal Rule of Civil Procedure 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court offered several factors for district courts to consider in deciding whether to grant a motion to amend under Rule 15(a):

In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182; *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). "[W]e have held that a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)*; see also Boehm v. Shemaria*, 478 Fed.App'x. 457, 457 (9th Cir. 2012). When amendment would be futile, the district court need not grant leave to amend. *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

Plaintiff has been provided multiple opportunities to amend claims in his complaint and has failed to remedy the deficiencies alleged by this Court. The Court concludes that any further amendment to the complaint would be futile.

The Fourth Amended Complaint (ECF No. 147) is DISMISSED with prejudice. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff.

Dated: October 2, 2019

Hon. William Q. Hayes
United States District Court

14cv1142-WQH-BGS